JOHNSON BOTTINI,LLP
FRANK J. JOHNSON (174882)
FRANCIS A. BOTTINI, JR. (175783)
BRETT M. WEAVER (204715)
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 233-5535

ROBBINS UMEDA & FINK LLP
BRIAN J. ROBBINS (190264)
STEVEN J. SIMERLEIN (156979)
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INFOSONICS CORPORATION DERIVATIVE LITIGATION | Lead Case No. 06-CV-1336 BTM(WMC) |
| | (Derivative Action) |
| This Document Relates To: | PLAINTIFFS' OPPOSITION TO DEFENDANTS MARX AND PICOW'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |
| ALL ACTIONS. | |
| | Judge: Hon. Barry Ted Moskowitz |
| | Courtroom: 15 |
| | Hearing Date: June 22, 2007 |
| | Hearing Time: 11:00 a.m. |

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ..... ii-iv

I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 3

III. ARGUMENT ..... 7

A. Applicable Legal Standards Pursuant to Rule 12(b)(2) ..... 7

B. California's Long-Arm Statute and Constitutional Due Process ..... 8

C. Specific Jurisdiction Exists Over Picow and Marx ..... 9

1. Plaintiffs' Causes of Action "Arise Out of" or Relate to Nonresident Defendants' Forum Related Activities ..... 12

2. Nonresident Defendants Purposefully Availed Themselves of California and Purposefully Directed Their Activities at California ..... 13

3. The Exercise of Jurisdiction Over Nonresident Defendants Is Reasonable ..... 15

a. Nonresident Defendants "Purposefully Interjected" Themselves into the Forum State ..... 17

b. Litigating in California Does Not Pose an Undue Burden on Nonresident Defendants ..... 18

c. Exercising Jurisdiction Over Nonresident Defendants in California Does Not Conflict With the Sovereignty of Their Home State ..... 18

d. California Maintains a Strong Interest in Adjudicating the Suit ..... 18

e. Jurisdiction in California Results in the Most Efficient Resolution of the Controversy ..... 19

IV. CONCLUSION ..... 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
1 F.3d 848 (9th Cir. 1993) ........ 15

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ........ 7, 11, 12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 9, 13, 14, 17

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 11

*Chan v. Society Expeditions*,
39 F.3d 1398 (9th Cir. 1994) ........ 8

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir.1994) ........ 8, 13, 15

*Cutco Industries, Inc. v. Naughton*,
806 F.2d 361 (2d Cir. 1986) ........ 8

*Data Disc, Inc. v. Systems Technology Associates, Inc.*,
557 F.2d 1280 (9th Cir.1977) ........ 7

*Diamond Multimedia Sys., Inc. v. Superior Court*,
19 Cal. 4th 1036 (1999) ........ 19

*FDIC v. British-American Ins. Co*,
828 F.2d 1439 (9th Cir. 1987) ........ 9

*Figi Graphics, Inc. v. Dollar General Corp.*,
33 F. Supp. 2d 1263 (S.D. Cal. 1998) ........ 10

*Haisten v. Grass Valley Med. Reimbursement Fund Ltd.*,
784 F.2d 1392 (9th Cir. 1986) ........ 10, 15

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) ........ 8

*Hollinger Int'l, Inc. v. Hollinger Inc.*,
2005 U.S. Dist. LEXIS 14438 (D. Ill. 2005) ........ 14, 17

*Hollingsworth v. Iwerks Entertainment, Inc.*,
947 F.Supp. 473 (M.D. Fla. 1996) ........ 11

*Howard v.Everex Systems, Inc.*,
228 F.3d 1057 (9th Cir. 2000) ........ 5

*In re Cendant Corp. Derivative Action Litig.*,
189 F.R.D. 117 (D.N.J. 1999) ........ 13

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945) ........ 10

*Kaiser Aetna v. Deal*,
86 Cal. App. 3d 896 (1978) ........ 11, 14

*McGee v. Int'l Life Ins. Co.*,
355 U.S. 220 (1957) ........ 13

*Metropolitan Life Ins. Co. v. Neaves*,
912 F.2d 1062 (9th Cir. 1990) ........ 8

*Miller v. American Tel. & Tel. Co.*,
394 F. Supp. 58 (E.D. Pa. 1975) ........ 16

*Ochoa v. J.B. Martin & Sons Farms*,
287 F.3d 1182 (9th Cir. 2002 ........ 10

*Rocke v. Canadian Auto. Sport Club*,
660 F.2d 395 (9th Cir.1981) ........ 8, 10

*Ryan v. Gifford*,
918 A.2d 341 (Del. Ch. 2007) ........ 17

*Schuster v. Gardner*,
127 Cal. App. 4th 305 (2005) ........ 14

*Seagate Tech. v. A. J. Kogyo Co.*,
219 Cal. App. 3d 696 (1990) ........ 11

*Serras v. First Tennessee Bank Nat'l Asso.*,
875 F.2d 1212 (6th Cir. 1989) ........ 8

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ........ 17, 18

*Shute v. Carnival Cruise Lines*,
897 F.2d 377 (9th Cir. 1990) *rev'd on other grounds* 499 U.S. 585 (1991) ........ 15

*Simmons v. Templeton*,
684 So.2d 529 (La. Ct. App. 1997) ........ 14

*Steel Warehouse of Wis., Inc. v. Leach*,
154 F.3d 712 (7th Cir. 1998) ........ 13

*Taylor-Rush v. Multitech Corp.*,
217 Cal. App. 3d at 118 (Cal. Ct. App. 1990) ........ 16

*Terracom v. Valley Nat'l Bank*,
49 F.3d 555 (9th Cir. 1995) ........ 13

*Vons Cos. v. Seabest Foods*,
14 Cal. 4th 434 (1996) ........ 9

*Young v. Colgate-Palmolive Co.*,
790 F.2d 567 (7th Cir. 1986) .......... 12

*Ziegler v. Indian River County*,
64 F.3d at 473 (9th Cir. 1995) .......... 10, 12

**STATUTES, RULES AND REGULATIONS**

17 C.F.R.
§ 240.16-a3(g)(1) .......... 5

28 U.S.C.
§ 1332(c)(1) .......... 12

C.C.P.
§ 410.10 .......... 8, 11

F.R.C.P.
12(b)(2) .......... 7, 8
12(b)(6) .......... 1

## I. INTRODUCTION

Individual Defendants Robert S. Picow ("Picow") and Randall P. Marx ("Marx") have specially appeared and moved to dismiss plaintiffs' consolidated derivative complaint under F.R.C.P. 12(b)(6) on the basis of this Court's alleged lack of personal jurisdiction over them. On March 21, 2007, the Court entered an Order Granting Application for Leave to Conduct Discovery Regarding Personal Jurisdiction and Granting in Part and Denying in Part Application to Continue Briefing Schedule on Motions to Dismiss (the "Order"). In the Order the Court noted that "To the extent that Marx and Picow gained knowledge, took actions, or failed to take actions during these Board or committee meetings that gave rise to Plaintiffs' claims, Marx and Picow's contacts with California would be sufficient to satisfy the 'minimum contacts' test." Order at 3. The documents, interrogatory responses, and depositions of Marx and Picow confirm that Marx and Picow satisfy this test. Thus, Marx and Picow's motion to dismiss must be denied.

As admitted by Marx and Picow, such individuals served as members of the Board of Directors (the "Board") of InfoSonics Corporation, a corporation headquartered here in San Diego. Both Picow and Marx were not only Board members but both served on InfoSonics' Audit Committee and Compensation Committee (with Marx serving as the Chairman of both committees). Both Picow and Marx have submitted declarations stating that they each attended *at least* 3-4 InfoSonics Board meetings in San Diego each year since 2003. Moreover, Marx and Picow's Second Amended Responses to Plaintiffs' Interrogatories state that Mr. Marx and Mr. Picow each attended over 45 InfoSonics Board meetings from January 2004 through December 2006.[1] That is all that is required to establish specific jurisdiction over Picow and Marx since the gravamen of Plaintiffs' Consolidated Amended Complaint in this derivative action is that the harm caused to InfoSonics by the Individual Defendants occurred or was orchestrated in substantial part at these InfoSonics Board and Board committee meetings in San Diego. It was at the Compensation Committee meeting in San Diego that the wrongfully backdated InfoSonics stock options issued on

---

[1] Picow and Marx attended the Board meetings (which include Board, Board committee, and shareholder meetings) either in-person or by telephone.

December 30, 2005 were approved, with Marx and Picow both in attendance and Marx serving as Chairman. It was at the Audit Committee meeting in San Diego, with Marx and Picow both in attendance and Marx serving as Chairman, that such committee either approved the mischaracterization of InfoSonics warrants alleged in the Complaint or failed to properly investigate and research the characterization of the securities. It was at another Audit Committee meeting in San Diego in 2006 that the Audit Committee, with Marx and Picow in attendance and Marx serving as Chairman, decided to restate InfoSonics' Q1:06 financial results, announcing in the process that the previously-filed financial results were untrue and could no longer be relied upon – an admission that caused InfoSonics' stock to drop more than 28%. ¶32.[2]

In light of these systematic contacts between Marx and Picow and the State of California, and specifically the City of San Diego, which contacts involved the InfoSonics Board and Board Committee meetings which gave rise to the events which are the central focus of the Complaint, and the pivotal involvement of Picow and Marx in the alleged wrongful conduct, it is hard to believe that Marx and Picow contend that this Court lacks personal jurisdiction over them.

If this were not enough to require denial of Picow and Marx's motion, which it clearly is, the discovery reveals that Picow and Marx had substantial additional contacts with California wholly unrelated to their duties as directors of InfoSonics. The company for which Mr. Marx serves and has served as CEO during the entire time period relevant to the complaint, ARC Wireless Corporation, derives approximately 10% of its revenues from sales of its products to persons or corporations in the State of California. In fact, California is ARC Wireless' third largest market, and Mr. Marx has traveled to and within the State of California to conduct business on ARC Wireless' behalf at least three to four times per year for at least each of the last four years. This is certainly enough to constitute "purposeful availment" by Marx of the privilege of conducting business in California.

Mr. Picow also has systematically traveled to the great State of California for business unrelated to his duties as an InfoSonics director. He has traveled to California approximately two or

---

[2] All paragraph references are to Plaintiffs' Verified Consolidated Shareholder Derivative Complaint, filed November 6, 2006.

three times per year in connection with various business commitments. Thus, he has also purposefully availed himself of the benefits of conducting business in California, and the exercise of personal jurisdiction over him by this Court certainly cannot be said to be unreasonable.

The allegations of the Complaint, which must be accepted as true on this motion, combined with the discovery from Picow and Marx, which demonstrates that the systematic contacts of Picow and Marx with California directly gave rise to the claims asserted by Plaintiffs, is more than sufficient to establish specific jurisdiction over Marx and Picow in this Court. Thus, the motion to dismiss should be denied. In light of the clear evidence of specific jurisdiction, there is no need for the Court to determine whether there is also general jurisdiction over Marx and Picow.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This consolidated derivative action seeks recovery for the damages caused to InfoSonics Corporation ("InfoSonics" or the "Company") by the Individual Defendants – the officers and directors of the Company. The alleged wrongful conduct engaged in by the Individual Defendants concerns the issuance and approval of backdated InfoSonics stock options in December 2005, the failure of the Company to recognize an expense for the backdated options which were granted at less than fair market value, the misclassification of InfoSonics warrants, the dissemination of false and misleading financial statements concerning the stock options and warrants, and the subsequent restated financial results for Q1:06 that InfoSonics was forced to record due to the wrongdoing. ¶¶59-76. The restatement of InfoSonics' financial results for Q1:06 was filed on June 12, 2006. ¶76. The restatement caused InfoSonics to admit that it had overstated its net income by $564,342 and its net income by $0.07 per share. ¶76. In response to the news of the restatement, InfoSonics' stock fell $6.84 per share, losing 28 percent of its value. ¶75. InfoSonics will have to recognize an charge against earnings in the future due to the compensation expense that Generally Accepted Accounting Principles ("GAAP") require a company to take when it issues options at an exercise price less than the fair market value of the stock on the date the options were granted. InfoSonics is currently being investigated by the SEC and IRS.

Because the present motion filed by Individual Defendants Picow and Marx is addressed to the narrow issue of whether the Court has personal jurisdiction over them, Plaintiffs will only

address the relevant facts concerning personal jurisdiction. Plaintiffs respectfully refer the Court to Plaintiffs' Opposition to Defendants' Motion to Dismiss for Failure to Make a Demand on the Board of Directors, Lack of Standing, and Failure to State a Claim (filed March 26, 2007) for a more detailed description of the factual and procedural background of the litigation.

Individual Defendant Marx has been a director of InfoSonics since December 2003 and at all relevant times was the Chairman of both the Audit and Compensation Committee. ¶40. He is also a member of InfoSonics' Nominating and Corporate Governance Committee. ¶40. Marx received 15,000 of the backdated stock options issued on December 30, 2005. ¶26, 59. Marx is also CEO and Chairman of ARC Wireless. ¶40. Individual Defendant Picow is, and at all times relevant hereto was, a director of InfoSonics, serving in that capacity since December 2003. ¶41. Picow is a member of the Board's Audit, Compensation and Nominating and Corporate Governance Committees. ¶41. Picow has served as the Chairman of Cenuco Inc., a publicly-traded company engaged in wireless application development and software solutions. He also has served as a director of Streicher Mobile Fueling, a fuel distribution company, and as a director of Fundamental Management Corporation, a private fund management company. *Id.* Picow was the CEO of Allied Communications, a cellular telephone and accessory distribution company, for 11 years. Picow also received at least 15,000 options that were purportedly granted on December 30, 2005 – the lowest stock price for the period December 27, 2005 through January 20, 2006. *Id.*

Picow and Marx each admit to having had numerous contacts with the State of California during the Relevant Time Period, including attendance at meetings of the Board and Audit Committee and Compensation Committee of InfoSonics. *See* Declaration of Randall P. Marx in Support of Motion to Dismiss for Lack of Personal Jurisdiction, ¶¶6, 8 (admitting to 3-4 trips per year to California to attend InfoSonics Board meetings since December 2003 and to participating by telephone in additional meetings held in California); Declaration of Robert S. Picow in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Picow Decl."), ¶¶7-8 (admitting to visiting San Diego 5-7 times per year since December 2003, and stating that such visits pertained to attending InfoSonics Board meetings and other business related to his duties as a director of InfoSonics – activities that gave rise to the wrongdoing alleged by Plaintiffs in the Consolidated

Complaint). Since January 2004, Marx and Picow have each attended, either in-person or by telephone, at least 45 InfoSonics Board meetings. *See* Specially Appearing Defendants' Second Amended Responses to Plaintiffs' First Set of Special Interrogatories Regarding Personal Jurisdiction, Response to Interrogatory No. 2 (attached as **Ex. 1** to the Declaration of Francis A. Bottini, Jr. In Support of Plaintiffs' Opposition to Specially Appearing Defendants Marx and Picow's Motion to Dismiss for Lack of Personal Jurisdiction ("Bottini Decl.")).

InfoSonics' Compensation Committee was "specifically responsible under its charter for reviewing and approving grants of stock options ... to InfoSonics insiders." ¶107. This committee's charter provided that it was to "discharge the responsibilities of the Board of Directors ... relating to compensation of the Company's officers" and was to "establish and administer," as well as recommend to the Board, incentive and equity-based compensation plans for Company executives. *Id.* The directors on this committee – Marx, Picow and Waldron – constituted a majority of the Board, held their positions at all relevant times hereto, and had a duty to review and grant stock options granted to InfoSonics officials during their tenures. ¶¶103, 107. They sat on the Audit Committee as well. ¶105. Marx and Waldron had substantial finance experience and were the Company's designated accounting experts. ¶105(d).

The relevant InfoSonics stock option plan required that the exercise price of all stock options granted to Company insiders must have been no less than the fair market value of the underlying common stock on the date the incentive options were granted. ¶¶24, 70. Nevertheless, Marx, Picow and Waldron approved no fewer than 185,000 backdated stock options. ¶26. They approved an award of 25,000 and 50,000 of the Options to Ram and Rosler, respectively. *Id.* But the misconduct went beyond mere approval of the transactions. Marx, Picow and Waldron also awarded to themselves 15,000 Options each. ¶26. Further, all of the directors reported their Options late in violation of SEC regulations. ¶26.[3]

---

[3] *See* 17 C.F.R. § 240.16-a3(g)(1) ("Form 4 must be filed before the end of the second business day following the day on which the subject transaction has been executed."); *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061-62 (9th Cir. 2000) (SEC reporting requirements "are clear and unequivocal, and they are satisfied only by the filing of complete, accurate and timely reports.").

The Compensation Committee backdated the December 2005 grants to bring an instant paper gain to the recipients because the Options were priced below the stock's fair market value when they were actually awarded. ¶¶26, 59. Under Generally Accepted Accounting Principles ("GAAP"), this instant paper gain was the equivalent of paying extra compensation to the recipients, and thus required InfoSonics to record a compensation expense pertaining to such options. ¶60. However, InfoSonics failed to record the required compensation expense at the time the options were granted (and still has not recorded the expense), and as a result its profits were overstated. The Company now faces severe tax consequences and SEC investigation. ¶¶61-64.

Plaintiffs allege that Marx and Picow directly participated in the related schemes to backdate stock options and misclassify the warrants. As Audit Committee members (¶105), they were obligated to meet "as often as necessary, at least on a quarterly basis." ¶105. Each had a duty to make *timely* efforts gather, compile, assimilate, analyze, understand and disseminate to the Board as appropriate "all critical accounting policies to be used" and "all alternative treatments of financial information within GAAP" that then related to the issuance of the warrants. ¶105(a). They also were required to work with the independent auditors in a timely and effective manner to ensure proper accounting for the warrants, as well as to ensure that the Company had implemented adequate internal financial controls to prevent the backdating of stock options. ¶105. Marx and Picow, as this committee's designated experts, were subject to heightened duties of care and loyalty. ¶105(d). The proper discharge of these duties was critical to the proper financial treatment, documentation and reporting of the private equity offering of January 30, 2006 – a critical event to the Company. ¶105(c)(i). With regard to the misclassified warrants, the June 2006 press release conceded that the Audit Committee failed to adequately investigate and review available literature in a ***timely*** manner. ¶105(a). The complaint also alleges that Marx and Picow consciously chose to maintain the improper classification of the warrants. ¶105(b).

The complaint alleges that Marx and Picow violated their fiduciary duties as Audit Committee members. All the meetings of the InfoSonics Board, Audit Committee, and Compensation Committee occurred here in San Diego. Marx and Picow have admitted that they

traveled to San Diego to attend these meetings where the alleged wrongdoing occurred. Picow Decl, ¶¶7-8; Marx Decl., ¶¶6,8; Bottini Decl., **Ex. 1** (Response to Interrogatory No. 2).

Moreover, *in addition* to their travel to California for InfoSonics Board meetings, Marx and Picow have each traveled to California at least two to three times per year to conduct business unrelated to their duties as directors of InfoSonics. *See* Bottini Decl., **Ex. 1** (Response to Interrogatory No. 1); Bottini Decl., **Ex. 2**, at 23-24 (Marx deposition transcript) (Marx has traveled to California six to seven times per year since 2003 to conduct business on behalf of ARC Wireless). Between his in-person travel to California to attend InfoSonics Board meetings and his in-person travel to California to conduct business for ARC Wireless, Mr. Marx has been physically present in California approximately once per month for each of the last four years:

"Q: Okay. So if you're here 12 times per year, that's about once a month, right?

Mr. Benzian: Object. Argumentative.

THE WITNESS: Yes."

Bottini Decl., **Ex. 2**, at 24:8-11.

## III. ARGUMENT

The motion to dismiss filed by Picow and Marx should be denied because Picow and Marx are subject to specific personal jurisdiction in California. Picow and Marx purposefully directed their conduct at California and its citizens, which directly led to Plaintiffs' claims in this Action. Furthermore, in accordance with the principles of due process, the exercise of personal jurisdiction over Picow and Marx is reasonable.

### A. Applicable Legal Standards Pursuant to Rule 12(b)(2)

When a defendant's Rule 12(b)(2) motion to dismiss is made as its initial response, and the court decides the motion without conducting an evidentiary hearing, Plaintiffs need only make a *prima facie* showing that personal jurisdiction exists. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977) ("If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a *prima facie* showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to

dismiss."). A *prima facie* showing is established when Plaintiffs have produced admissible evidence which, if believed, would be sufficient to demonstrate personal jurisdiction. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (reversing dismissal for lack of personal jurisdiction over insurance broker). The threshold necessary for Plaintiffs to establish a *prima facie* showing of personal jurisdiction is very low. *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 (9th Cir. 1990) ("in establishing its *prima facie* case, the documents submitted by the plaintiff 'are construed in the light most favorable to the plaintiff and all doubts are resolved in its favor.'") (quoting *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986)).

Additionally, when determining a Rule 12(b)(2) motion to dismiss, the Complaint's factual allegations must be accepted as true, and any factual conflicts in the parties' declarations must be resolved in Plaintiffs' favor. *Harris*, 328 F.3d at 1129. If anything in the declarations filed by Picow and Marx conflict with Plaintiffs' jurisdictional allegations, the court must construe all reasonable inferences in favor of Plaintiffs. *Id.* "Any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff *Serras v. First Tennessee Bank Nat'l Asso.*, 875 F.2d 1212, 1214 (6th Cir. 1989).

**B. California's Long-Arm Statute and Constitutional Due Process**

Personal jurisdiction over a defendant must comply with California's long-arm statute and with the Constitution's requirement of due process. *See Chan v. Society Expeditions*, 39 F.3d 1398, 1404-1405 (9th Cir. 1994); *see also Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir.1994) (applying the law of the state in which the district court sits when no federal statute governs jurisdiction). California's "long arm" statute permits California courts to exercise jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." C.C.P. §410.10. Under California's long arm statute, the Court need only determine whether the assertion of personal jurisdiction over the Nonresident Defendants violates the Due Process Clause of the Constitution. *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 398 (9th Cir.1981). A state possesses personal jurisdiction comporting with the limitations of the Due Process Clause when

general or specific jurisdiction is established. *See FDIC v. British-American Ins. Co*, 828 F.2d 1439, 1442 (9th Cir. 1987); *Vons Cos. v. Seabest Foods*, 14 Cal. 4th 434, 445 (1996).

Here, the declarations of Picow and Marx, together with their interrogatory answers and deposition testimony, which admit to numerous contacts with California to attend the InfoSonics Board meetings where the central wrongdoing alleged in the Complaint occurred, are sufficient to support the exercise of specific jurisdiction over Picow and Marx. Picow and Marx cannot utilize the Due Process Clause "as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

### C. Specific Jurisdiction Exists Over Picow and Marx

The Nonresident Defendants – Mssrs. Marx and Picow – voluntarily assumed the duties of directors of InfoSonics, a corporation which is a California citizen with its headquarters in San Diego, California. ¶¶6, 7, 35, 40-41. Picow and Marx engaged in activity in California that directly gave rise to the wrongdoing alleged in the Complaint – *i.e.* the wrongful backdating of InfoSonics stock options and the misclassification of InfoSonics stock warrants that was conducted by the Compensation and Audit Committees of InfoSonics, on which Picow and Marx served, and the meetings of which occurred here in California and were attended by Marx and Picow. ¶¶26-31, 40-41,65; Bottini Decl., **Ex. 1** (Response to Interrogatory No. 2); Bottini Decl., **Ex. 2**, at 67-98 (Marx's participation in InfoSonics Board and Board Committee meetings alleged in Plaintiffs' Amended Complaint). Picow and Marx, as members of the Audit Committee (with Marx being its Chairman), approved the issuance from San Diego of InfoSonics' 2006 Proxy Statement which falsely stated that the December 2005 stock options "were granted with an exercise price equal to the fair market value of InfoSonics' common stock on the dates of the grant." ¶70. The 2006 Proxy also indicated that the Audit Committee had recommended to the Board, and that the Board had approved, the financial statements for fiscal year 2005 be included on the Annual Report on Form 10-K for the year ended December 31, 2005. ¶70.

Moreover, Marx served as the Chairman of the Compensation Committee meeting held on December 30, 2005 where the stock options were awarded. Bottini Decl., **Ex. 2**, at 67-74. While Marx's counsel improperly instructed Mr. Marx to not answer any questions about what additional

events transpired at the December 30, 2005 meeting, clearly Marx served as the Chairman of the meeting at which the allegedly backdated options were awarded. *Id.* Mr. Picow also attended this meeting. Bottini Decl., **Ex. 1** (Response to Interrogatory No. 2).

Moreover, *in addition* to their travel to California for InfoSonics Board meetings, Marx and Picow have each traveled to California at least two to three times per year to conduct business unrelated to their duties as directors of InfoSonics. *See* Bottini Decl., **Ex. 1** (Response to Interrogatory No. 1); Bottini Decl., **Ex. 2**, at 23-24 (Marx deposition transcript) (Marx has traveled to California six to seven times per year since 2003 to conduct business on behalf of ARC Wireless). Between his in-person travel to California to attend InfoSonics Board meetings and his in-person travel to California to conduct business for ARC Wireless, Mr. Marx has been physically present in California approximately once per month for each of the last four years. Bottini Decl., **Ex. 2** at 24:8-11.

Specific jurisdiction, established through Nonresident Defendants' "minimum contacts" with California, satisfies due process because the maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Figi Graphics, Inc. v. Dollar General Corp.*, 33 F. Supp. 2d 1263, 1265 (S.D. Cal. 1998). To show minimum contacts with California, Plaintiffs must show: (i) Plaintiffs' causes of action "arise out of" or relate to Nonresident Defendants' forum-related contacts; (ii) Nonresident Defendants purposefully directed their activities toward residents of the forum state, or purposefully availed themselves of the privilege of conducting activities within California, thus invoking the benefits and protections of local law; and (iii) California's exercise of jurisdiction is reasonable. *Ziegler v. Indian River County*, 64 F.3d at 473 (9th Cir. 1995); *see also Rocke*, 660 F.2d at 398.

The Ninth Circuit has adopted a "flexible approach" when applying these three factors, permitting personal jurisdiction without meeting each of the factors. "Jurisdiction may be established with a lesser showing of minimum contacts 'if considerations of reasonableness dictate.'" *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1188 n.2 (9th Cir. 2002) (quoting *Haisten v. Grass Valley Med. Reimbursement Fund Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)). Further, Nonresident Defendants' contacts with California do not necessitate that they be physically present in California to justify exercising personal jurisdiction over them. *See Calder v. Jones*, 465

U.S. 783, 789-90 (1984) (holding California properly exercised personal jurisdiction over nonresident defendants when the nonresident defendants knew that the injury would be felt by respondent in the State in which she lives and works). Finally, even if Nonresident Defendants did not take their actions with the ***intent*** of causing effects in the state of California, jurisdiction may nonetheless be asserted over them if the acts "could ***reasonably be expected*** to cause effects within the forum state." *Kaiser Aetna v. Deal*, 86 Cal. App. 3d 896, 902 (1978); *see also Seagate Tech. v. A. J. Kogyo Co.*, 219 Cal. App. 3d 696, 702 (1990) (when acknowledging that a single act of a nonresident corporate officer may constitute a contact supporting personal jurisdiction in the state where it causes effects, the Court stated "the Judicial Council's comments to Code of Civil Procedure section 410.10, recognizes that *an individual may have contact with the forum state where he causes another to act whether or not the individual has himself contacted the state*").

Here, the Court has already ruled that: "To the extent that Marx and Picow gained knowledge, took actions, or failed to take actions during these Board or committee meetings that gave rise to Plaintiffs' claims, Marx and Picow's contacts with California would be sufficient to satisfy the 'minimum contacts' test." Order at 3. As demonstrated above, the declarations, interrogatory responses, and deposition transcripts of Marx and Picow (*see* Bottini Decl., Exs. 1-3) demonstrate that the contacts of Marx and Picow with the State of California are more than sufficient to meet the standard set forth by the Court in its March 21, 2007. Thus, no more is required.

Defendants' argument to the contrary in their motion to dismiss is based on inapposite cases from other jurisdictions with different legal standards. For example, Defendants rely on a district court case from Florida for their contention that the activities performed here in San Diego by Marx and Picow do not satisfy the requirements for specific jurisdiction. *See* Defs' Mem. at 12, citing *Hollingsworth v. Iwerks Entertainment, Inc.*, 947 F.Supp. 473 (M.D. Fla. 1996). But the Ninth Circuit, in discussing specific jurisdiction, has rejected reliance on such cases since "Florida law requires a more substantial connection to the forum state than does the federal Due Process Clause." *Ballard*, 65 F.3d at 1499. California law does not require a more substantial connection to the forum state than the Due Process Clause, and thus personal jurisdiction is satisfied here.

### 1. Plaintiffs' Causes of Action "Arise Out of" or Relate to Nonresident Defendants' Forum Related Activities

Because Nonresident Defendants' illegal conduct, while acting as officers and directors of InfoSonics, caused harm to the Company, Plaintiffs' causes of action "arise out of" Nonresident Defendants' contacts with InfoSonics. *Ziegler*, 64 F.3d at 473. The Ninth Circuit follows a "but for" test in determining whether the claim "arises out of" a defendant's forum-related activities. *See Ballard*, 65 F.3d at 1500. As such, the determining factor is whether Plaintiffs' claims would not have arisen "but for" Nonresident Defendants forum activities. *See id.* As the Complaint, declarations, and discovery from Picow and Marx demonstrate, the Nonresident Defendants' liability relates to or "arises out of" their contacts with California.

InfoSonics' principal place of business is in San Diego, California, where InfoSonics' executive offices are maintained. Picow and Marx have submitted declarations and interrogatory responses admitting that they attended InfoSonics Board meetings in California. Picow and Marx also attended meetings of Board committees in California. Marx Decl., ¶¶6-8; Picow Decl., ¶¶6-8; Bottini Decl., **Ex. 1** (Response to Interrogatory No. 2). In addition, as members of the Audit Committee, Marx and Picow were required to travel to California for meetings and to participate in telephone calls with InfoSonics' independent auditors. Marx, as Chairman of the Audit Committee, also apparently attended a 2006 meeting in San Diego concerning InfoSonics' restatement of its First Quarter 2006 financial results.

Through these various meetings and communications, as Plaintiffs have alleged in the Complaint, Nonresident Defendants allowed or caused misleading statements, press releases and SEC filings to be made. These breaches of fiduciary duty stem from InfoSonics' corporate headquarters, and are also directed at InfoSonics, a California citizen pursuant to 28 U.S.C. §1332(c)(1). Further, conduct "arises out of" the forum where the misleading statements are adopted. *See Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 570-71 (7th Cir. 1986) (finding that

the proper forum was the State in which the anti-takeover plan at issue was adopted).[4] Therefore, Nonresident Defendants' contact with California was clearly related to or "arises out of" their alleged activity in California and satisfies the Ninth Circuit's "but for" analysis.

**2. Nonresident Defendants Purposefully Availed Themselves of California and Purposefully Directed Their Activities at California**

The purposeful availment requirement ensures nonresident defendants will not be "haled into a jurisdiction through 'random,' 'fortuitous,' or 'attenuated' contacts." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560 (9th Cir. 1995) (quoting *Burger King*, 471 U.S. at 475). Purposeful availment is established "where the contacts proximately result from actions by the defendant ***himself*** that create a 'substantial connection' with the forum state." *Burger King*, 471 U.S. at 475 (emphasis in original) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). "[W]ithin the rubric of 'purposeful availment' the [Supreme] Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a ***foreign*** act having ***effect*** in the forum state." *Core-Vent*, 11 F.3d at 1485. Even a single purposeful contact may be sufficient to meet the "minimum contacts" standard when the underlying claims are directly related to that contact. *See McGee*, 355 U.S. at 223 (holding California properly exercised jurisdiction over Texas insurance company when the company only delivered a contract to a California citizen and received payments from a California citizen).

Nonresident Defendants attempt to limit the scope and mischaracterize the purposeful availment prong of the "minimum contacts" test. Nonres. Defs.' Mem. at 10-12. Purposeful

---

[4] Nonresident Defendants proffer *In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117, 135-37 (D.N.J. 1999) for support that a nonresident employee may not be subject to personal jurisdiction where the corporation does business. In *Cendant Corp.*, however, the defendant never visited the office in the forum state to conduct any business. *Id.* at 135. In this case, Nonresident Defendant Directors visited InfoSonics' California headquarters or participated in meetings in California where the alleged liability arose. Picow Decl., ¶¶7-8; Marx Decl., ¶¶6, 8; Bottini Decl., **Ex. 1**. Nonresident Defendants assert that *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714-15 (7th Cir. 1998) also supports their position. Nonres. Defs.' Mem. at 7-8. But in that case, the circuit court highlighted the directors' attendance at meetings in both the forum state (Wisconsin) and another state (Illinois). *Steel Warehouse*, 154 F.3d at 715. The circuit court found the plaintiff was unable to articulate in which state the alleged breaches arose. Here, in contrast, Plaintiffs contend meetings where Nonresident Defendants' alleged breaches took place occurred or arose in California.

availment is not only satisfied when the Nonresident Defendants purposefully directed their activities to residents of California, but also when the Nonresident Defendants availed themselves of the privilege of conducting activities within California. *See Burger King*, 471 U.S. at 477-78. Moreover, Nonresident Defendants do not need to specifically intend to harm California residents for California to exercise jurisdiction; it is enough if their acts "could ***reasonably be expected*** to cause effects within the forum state." *Kaiser Aetna*, 86 Cal. App. 3d at 902.

The Nonresident Defendants ignore that this is a derivative suit brought on behalf of InfoSonics, a California citizen. First, as directors of the Company, the Nonresident Defendants owed InfoSonics a fiduciary duty. *Schuster v. Gardner*, 127 Cal. App. 4th 305, 317 (2005). By breaching their fiduciary duty, the Nonresident Defendants directly harmed a California citizen. Second, the Nonresident Defendants received compensation and stock options which were issued from the InfoSonics' California corporate headquarters. This compensation unjustly enriched Nonresident Defendants at the expense of InfoSonics. ¶¶166-167.

Purposeful availment has been found in other cases under similar facts. For example, in *Hollinger Int'l, Inc. v. Hollinger Inc.*, 2005 U.S. Dist. LEXIS 14438 (D. Ill. 2005), a district court upheld Illinois' exercise of personal jurisdiction over a director of a Delaware corporation because the corporation's principal place of business was in Chicago, Illinois. *Hollinger*, 2005 U.S. Dist. LEXIS 14438 at *11. The court concluded that the defendant, as have Nonresident Defendants in this case, voluntarily accepted the position from which he derived substantial benefits directly from the state of the company's corporate headquarters. *Id.* at 11.[5] Moreover; the alleged wrongs stemmed directly from the company's Chicago headquarters. *Id. See also Simmons v. Templeton*, 684 So.2d 529, 534 (La. Ct. App. 1997) (finding personal jurisdiction in Louisiana over nonresident defendant directors of a corporation with its principal place of business, as well as its executive and financial headquarters in Louisiana.).

---

[5] "Common sense tells a reasonable person that if you become a director (and thus assume all of the benefits and duties associated with such a position) of a company incorporated in Delaware with its principal executive offices in Chicago, there is a very real possibility that you could face litigation in either of these forums." *Id.*

Purposeful availment is also met when Nonresident Defendants engaged "in some form of affirmative conduct allowing or promoting the transaction of business with the forum state." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990) *rev'd on other grounds* 499 U.S. 585 (1991); *Haisten*, 784 F.2d at 1397 ("[t]here is a ***presumption of reasonableness*** upon a showing that the defendant purposefully directed his activities at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable.") (emphasis in original). Plaintiffs have specifically alleged the misleading statements, press releases and SEC filings disseminated from Nonresident Defendants conduct while attending or participating in meetings held out of InfoSonics' headquarters in California. ¶¶26-31, 40-41, 59-64. Picow and Marx each signed public SEC filings that subject them to liability in this action. ¶¶65-73. Plaintiffs have also alleged that Nonresident Defendants caused or allowed the misleading information to be disseminated to the public. *Id.* Here, Picow and Marx engaged in systematic, repeated conduct purposefully directed at California; this is enough since the "minimum contacts" test is satisfied when just one contact originating from outside of California has an effect in California. *Haisten*, 784 F.2d at 1397. Therefore, it is clear that Nonresident Defendants multiple acts more than satisfy the "minimum contacts" requirement.

### 3. The Exercise of Jurisdiction Over Nonresident Defendants Is Reasonable

In determining the reasonableness of the jurisdiction, courts consider the following factors: (i) whether a defendant "purposefully" interjected himself into the forum state's affairs; (ii) a defendant's burden on defending a suit in the forum state; (iii) whether there is any conflict with the sovereignty of a defendant's state; (iv) the forum state's interest in adjudicating the suit; (v) the most efficient judicial resolution of the controversy; (vi) the importance of the forum to a plaintiff's interest in convenient and effective relief; and (vii) the existence of an alternative forum. *Core-Vent*, 11 F.3d at 1487-88; *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 (9th Cir. 1993). No one factor is dispositive. Rather, a court must balance all seven. *Core-Vent*, 11 F.3d at 1488. The ***burden is on the defendant*** to prove that the forum's exercise of jurisdiction would "be unreasonable." *Amoco Egypt*, 1 F.3d at 851; *see also Haisten*, 784 F.2d at 1397 ("[T]here is a

***presumption of reasonableness*** upon a showing that the defendant purposefully directed his activities at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable.").

Personal jurisdiction over Nonresident Defendants is proper, as set forth above, because Nonresident Defendants' conduct with California relates to Plaintiffs' claims and it was purposefully directed at a California resident. Nonresident Defendants contracted with InfoSonics for employment or service on the Board which obligated them to uphold their fiduciary duty to the California-based company.[6] Nonresident Defendants' failure to fulfill those duties forms the basis of this shareholder derivative action.

The Nonresident Defendants fail to meet their burden of showing jurisdiction over them is unreasonable. Here, Marx and Picow both voluntarily assumed the privilege of serving as directors of InfoSonics in 2003 and assumed the "burden" of traveling to San Diego, one of the foremost vacation destinations in the United States, at least 3-4 times per year for InfoSonics Board meetings and other business. Marx and Picow are sophisticated businessmen who sit on the boards of other companies. ¶¶40-41; Picow Decl., ¶5 (Picow serves on board of directors of four other companies). They routinely travel throughout the United States for business. Due to their Board memberships at InfoSonics, they already have to be in San Diego several times a year anyway. Moreover, their declarations demonstrate that Picow and Marx have commuted by plane every week between their home states and places of work. For example, for 15 years Picow worked in Indianapolis but lived in Philadelphia. Picow Decl., ¶2. For the last 17 years, Marx has worked in Colorado but lived in Oklahoma. Marx Decl., ¶¶2, 5. Here, Marx and Picow have not satisfied their burden of demonstrating that the exercise of jurisdiction over them here in California would be unreasonable or burdensome. Short of actually going to trial, few personal appearances are required by the defendants, as opposed to their attorneys. Moreover, given the type of intentional conduct involved

---

[6] California does not recognize the "fiduciary shield doctrine" permitting insulation of non-resident corporate officers and directors from submitting to personal jurisdiction in a foreign state. *Compare Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d at 118 (Cal. Ct. App. 1990) *with Miller v. American Tel. & Tel. Co.*, 394 F. Supp. 58, 64 (E.D. Pa. 1975).

with stock option backdating, which Delaware courts have indicated is so egregious that it subjects directors to personal liability, Marx and Picow cannot contend that it is unreasonable to be subjected to personal jurisdiction in the state in which they carried out their wrongful conduct.[7]

**a. Nonresident Defendants "Purposefully Interjected" Themselves into the Forum State**

Because Nonresident Defendants deliberately engaged in significant activities within the forum state, "it is presumptively not unreasonable to require [them] to submit to the burdens of litigating in that forum as well." *Burger King*, 471 U.S. at 476. Nonresident Defendants contracted for employment or service on the Board with a California headquartered company, received benefits and compensation from that company, and then proceeded to breach the fiduciary duties they owed to that company. These contacts with California were specifically related to the conduct alleged in the Complaint and have had a substantial impact on InfoSonics, a California citizen. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) (finding personal jurisdiction presumptively reasonable when defendant purposefully engaged in activities within the forum state); *see also Hollinger*, 2005 U.S. Dist. LEXIS 14438 at *11 ("[nonresident defendants], however, [have] chosen to play ignorant and thus [have] violated the principle that 'the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.'" (quoting *Burger King*, 471 U.S. at 474)). Therefore, the exercise of jurisdiction over the Nonresident Defendants is reasonable.

---

[7] *See Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007) ("A director who approves the backdating of options faces at the very *least* a substantial likelihood of liability, if only because it is difficult to conceive of a context in which a director may simultaneously lie to his shareholders (regarding his violations of a shareholder-approved plan, no less) and yet satisfy his duty of loyalty. Backdating options qualifies as one of those "rare cases [in which] a transaction may be so egregious on its face that Board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists." Plaintiff alleges that three members of a Board *approved* backdated options, and another Board member accepted them. These are sufficient allegations to raise a reason to doubt the disinterestedness of the current Board and to suggest that they are incapable of impartially consider demand.").

**b. Litigating in California Does Not Pose an Undue Burden on Nonresident Defendants**

Nonresident Defendants have not claimed any undue burden of defending a suit in California. In fact, Picow and Marx have traveled to California numerous times each year since 2003 – not only to attend InfoSonics meetings but also to conduct business wholly unrelated to InfoSonics. *See* Bottini Decl., **Ex. 1** (Response to Interrogatory No. 1); Bottini Decl., **Ex. 2**, at 23-24 (Marx deposition transcript) (Marx has traveled to California six to seven times per year since 2003 to conduct business on behalf of ARC Wireless). Further, mere inconvenience of the forum is not enough to overcome jurisdiction. Litigation in the forum must be so gravely difficult that it puts the Nonresident Defendants to a severe disadvantage. *Sher*, 911 F.2d at 1365. Requiring Nonresident Defendants to defend locally, however, is not constitutionally unreasonable "in this era of fax machines and discount air travel." *Id.* Indeed, it is unlikely that Picow and Marx will have to make many, if any, personal appearances relating to this lawsuit, since their counsel will appear on their behalf at most hearings. Therefore, it is reasonable to exercise jurisdiction over the Nonresident Defendants.

**c. Exercising Jurisdiction Over Nonresident Defendants in California Does Not Conflict With the Sovereignty of Their Home State**

There is no conflict with the sovereignty of Nonresident Defendants' home states. These causes of action specifically relate to the harm Nonresident Defendants caused to a Maryland corporation with its principal place of business in California. Indeed, these claims have no bearing on Nonresident Defendants' home states of Colorado or Florida. Therefore, exercising jurisdiction over the Nonresident Defendants is proper.

**d. California Maintains a Strong Interest in Adjudicating the Suit**

California has a direct interest in adjudicating the suit. InfoSonics is a California citizen, and thus California has an interest in protecting California citizens from the harm caused by Nonresident Defendants. ¶6. Furthermore,

> California [] has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices. California business depends on a national investment market to support our industry. The California remedy for market

> manipulation helps to ensure that the flow of out-of-state capital necessary to the growth of California business will continue.

*Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1064 (1999).

#### e. Jurisdiction in California Results in the Most Efficient Resolution of the Controversy

California is also the most efficient judicial forum to resolve this controversy. InfoSonics is a California based corporation and the majority of Defendants are California citizens. ¶6. No other forum could resolve this controversy as efficiently as California.

## IV. CONCLUSION

Plaintiffs have adequately established, on the face of the Complaint and through limited discovery, that Nonresident Defendants are subject to personal jurisdiction in California. Nonresident Defendants have purposefully directed their conduct at California and its citizens. Further, Plaintiffs' claims arise directly out of Nonresident Defendants' contacts with California. Finally, Plaintiffs have shown that, in accordance with due process, exercising personal jurisdiction over Nonresident Defendants is reasonable. Thus, for the reasons provided herein and in the Complaint, Nonresident Defendants' Motion to Dismiss must be denied.

DATED: June 4, 2007

JOHNSON BOTTINI, LLP
FRANK J. JOHNSON
FRANCIS A. BOTTINI, JR.
BRETT M. WEAVER

[signature]
FRANCIS A. BOTTINI, JR.

655 W. Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 230-5535

ROBBINS UMEDA & FINK LLP
BRIAN J. ROBBINS (190264)
STEVEN J. SIMERLEIN (156979)
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Co-Lead Counsel for Plaintiffs