# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INFOSONICS CORPORATION DERIVATIVE LITIGATION | CASE NO. 06cv1336 BTM(WMc)<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, GRANTING MOTION TO DISMISS FOR FAILURE TO MAKE A DEMAND ON THE BOARD OF DIRECTORS, AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM** |

Specially appearing Defendants Robert S. Picow ("Picow") and Randall P. Marx ("Marx") have filed a motion to dismiss for lack of personal jurisdiction. Nominal Defendant InfoSonics Corporation and individual Defendants Joseph Ram ("Ram"), Jeffrey A. Klausner ("Klausner"), Joseph C. Murgo ("Murgo"), Abraham G. Rosler ("Rosler") and Kirk A. Waldron ("Waldron") have filed a motion to dismiss for failure to make a demand on the Board of Directors, and a motion to dismiss for lack of standing and failure to state a claim. For the reasons discussed below, Picow and Marx's motion to dismiss for lack of personal jurisdiction is **DENIED**. Defendants' motion to dismiss for failure to make a demand on the Board of Directors is **GRANTED**, and Defendants' motion to dismiss for lack of standing and failure to state a claim is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

This action is a derivative lawsuit brought by shareholders of InfoSonics Corporation ("InfoSonics" or the "Company") on behalf of the Company. InfoSonics is a Maryland

corporation with headquarters in San Diego, California. Defendant Ram is the Chairman of the Board, President, CEO and a director of InfoSonics. Defendant Klausner is the CFO of InfoSonics. Defendant Murgo is the Vice President of Sales of InfoSonics. Defendant Rosler is the Executive Vice President and a director of InfoSonics. Defendant Marx is a director of Infosonics. Marx is also a Chairman of the Board's Audit and Compensation Committees and is a member of the Board's Nominating and Corporate Governance Committee. Defendant Picow is a director of InfoSonics and is also a member of the Board's Audit, Compensation, and Nominating and Corporate Governance Committees. Defendant Waldron is a director of InfoSonics and is a member of the Board's Audit, Compensation and Nominating and Corporate Governance Committees.

This action arises out of allegedly "backdated" stock options granted in December 2005 and the misclassification of warrants issued by InfoSonics, which later led to a restatement of its net income for the first quarter of fiscal year 2006.

A.  <u>Backdating of Stock Options</u>

In a proxy statement filed with the SEC on July 8, 2005, the Company proposed to amend its 2003 stock option plan, and explained: "The Plan provides that the exercise price of incentive options granted cannot be less than the fair market value of the underlying common stock on the date the incentive options are granted." (Verified Consolidated Shareholder Derivative Complaint ("Compl.") ¶ 24.)

The Form 10-K filed on behalf of InfoSonics for fiscal year 2005, stated that "[o]n December 30, 2005, the Company granted options to purchase 220,500 shares of the Company's common stock to its executives and employees. The exercise price is $16.24. These options vest on the date of the grant. A compensation charge was not recorded in connection with the issuance of such options as the exercise price for the stock options granted was not less than the fair market value of the Company's common stock as of the date of the grant." (Compl. ¶ 25.)

However, Defendants Ram, Rosler, Klausner, Marx, Waldron, and Murgo did not

disclose their stock option grants on a Form 4 until January 17, 2006. (Compl. ¶ 26.) Defendant Picow did not disclose his grant on a Form 4 until January 18, 2006. (Id.) The stock options were granted at the lowest price at which the Company's stock had been trading during the period from December 27, 2005 through January 20, 2006. (Compl. ¶ 26.) Plaintiffs allege that the InfoSonics' Board of Directors approved the grants of the options to Defendants even though the options were improperly backdated. (Id.)

According to Plaintiffs, Defendants took affirmative steps to conceal their backdating actions by authorizing or otherwise causing the Company to issue various SEC filings and public statements that contained false disclosures concerning the grant dates of options granted to InfoSonics insiders. (Compl. ¶ 92.) Plaintiffs allege that because InfoSonics failed to properly record the costs associated with the extra compensation given to Defendants and other insiders, its profits were overstated during the fiscal period in which the options were granted, necessitating a restatement of the Company's past financial results. (Compl. ¶ 60.) Plaintiffs further allege that the backdating of stock options can have severe tax consequences. (Compl. ¶ 61.)

B.    Misclassification of Warrants

On January 30, 2006, InfoSonics issued warrants in connection with the private placement of common stock. The warrants were initially treated as a derivative liability.

On February 17, 2006, the SEC declared effective the Company's registration statement registering the shares underlying the warrants. (Compl. ¶ 28.) Consequently, the Company was required under the GAAP to reclassify the warrants as equity. (Id.) However, Defendants, including the members of InfoSonics' Audit Committee, directed InfoSonics to maintain the warrants' classification as a liability. (Id.) As a result of the misclassification of the warrants, InfoSonics improperly booked $564,342 in net income for the period from February 17, 2006 to March 31, 2006. (Id.)

On May 8, 2006, InfoSonics issued a press release announcing its financial results for the first quarter of 2006. The press release noted that "the Company had income from

a non-cash change in fair value of derivative liability (for financing related warrants) of $963,000 and non-cash expense related to stock-option compensation of $52,000." (Compl. ¶ 71.) The misclassification of the warrants and inaccurately-stated financial results were repeated in the Company's Form 10-Q filed on May 15, 2006. (Compl. ¶ 73.)

On June 12, 2006, InfoSonics revealed that it would need to restate its reported net income for the first quarter of 2006 because the Company had improperly treated the warrants as a derivative liability. (Compl. ¶¶ 74-76.) On that same day, the company filed a Form10-Q/A, which stated: "Since these warrants became part of permanent equity on February 17, 2006, InfoSonics should have ceased applying the mark to market provisions of EITF 00-19, on that date. Accordingly, the net income for the quarter ended March 31, 2006 has been reduced by a non-cash amount of $564,000." (Compl. ¶ 76.)

Market reaction to the restatement was swift and severe. (Compl. ¶ 32.) InfoSonics' stock fell from a close of $24.22 on Friday, June 9, 2006 to a close of $17.38 on June 12, 2006. (Compl. ¶ 32.)

Plaintiffs allege that the misclassification of the warrants resulted in an artificial inflation of the Company's stock price, which Ram, Klausner, Murgo and Rosler utilized to their advantage. (Compl. ¶ 30.) From May through early June 2006, these defendants sold some 136,000 of their personally-held shares for over $2.9 million in proceeds. (Compl. ¶ 30.)

C.   <u>Claims Asserted</u>

The Complaint asserts the following claims (1) Disgorgement under the Sarbanes-Oxley Act of 2002 against Defendants Ram and Klausner; (2) Violation of Section 14(a) of the Exchange Act against Ram, Rosler, Marx, Picow, and Waldron (the "Director Defendants"); (3) Violation of Cal. Corp. Code § 25402 (insider selling) against Ram, Klausner, Murgo, and Rosler; (4) Violation of Cal. Corp. Code § 25403 against the Director Defendants; (5) Breach of Fiduciary Duty for Insider Selling and Misappropriation of Information against Ram, Klausner, Murgo, and Rosler; (6) Breach of Fiduciary Duty against

all Defendants; (7) Abuse of Control against all Defendants; (8) Gross Mismanagement against all Defendants; (9) Waste of Corporate Assets against all Defendants; (10) Unjust Enrichment against all Defendants; (11) Accounting against all Defendants; (12) Rescission against all Defendants; (13) Constructive Trust against all Defendants.

## II. DISCUSSION

A. Personal Jurisdiction

Marx and Picow move to dismiss the action against them on the ground that the Court lacks personal jurisdiction over them. Marx and Picow's motion is **DENIED** because the Court finds that it has specific jurisdiction over them.

Both the California long-arm statute and Fed. R. Civ. P. 4(k)(2) require that the exercise of personal jurisdiction comply with federal due process requirements. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006). Generally, a court may exercise jurisdiction over a nonresident defendant where the defendant's minimum contacts with the forum state render the maintenance of the action inoffensive to traditional concepts of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945).

There are two types of personal jurisdiction — general and specific. General jurisdiction exists where a defendant's contacts with the forum state are "substantial" or "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9 (1984). A defendant whose contacts are substantial or continuous and systematic is subject to the jurisdiction of the forum even where the cause of action is unrelated to the contacts. Id.

Specific jurisdiction exists where (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum; (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

In determining whether "purposeful availment" has occurred in tort cases, the Ninth Circuit typically inquires whether a defendant purposefully directed his activities at the forum state. Yahoo! v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir. 2006). Under the effects test of Calder v. Jones, 465 U.S. 783 (1984), the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knows is likely to be suffered in the forum state. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. 2004). The "brunt" of the harm need not be suffered in the forum state. Yahoo!, 433 F.3d at 1207. "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." Id.

Here, Marx and Picow's contacts with California, though not infrequent, are insufficient to support general jurisdiction. However, Plaintiffs have made out a prima facie case of specific jurisdiction.

Plaintiffs allege that Picow and Marx, as Board members and members of the Compensation and Audit Committees were involved in the backdating of the stock options, the misclassification of the warrants, and the issuance of misleading SEC filings and public statements with respect to these issues. Picow and Marx have attended Board meetings and Committee meetings in person in San Diego as well as by telephone. (Exhs. 2 & 3 to Bottini Decl.)

Given that InfoSonics' principal place of business is California, Picow and Marx's alleged wrongful acts, which were intended to benefit themselves to the detriment of the Company, were expressly aimed at California and caused harm in California. In Mehlenbacher v. Jitaru, 2005 WL 4585859 (M.D. Fla. 2005), a derivative action, the court held that it had specific jurisdiction over a defendant director of the corporation. Even though there were no allegations that the director ever visited Florida, the complaint alleged that the director breached his fiduciary duty, thereby harming the corporation which maintained a principal place of business in Florida. The court explained that these allegations were sufficient to satisfy the due process requirements as interpreted in Calder.

Picow and Marx argue that actions they took while performing their duties as directors of InfoSonics cannot be used to establish personal jurisdiction. Although a court cannot rely solely on the status of a defendant as a director or officer to find the existence of personal jurisdiction, it can base personal jurisdiction on acts that a corporate officer personally authorizes, directs, or meaningfully participates in. Seagate Tech. v. A.J. Kogyo Co., Ltd., 219 Cal. App. 3d 696, 702-03 (1990). "Director status therefore *neither immunizes a person from individual liability* not subjects him or her to vicarious liability." Frances T. v. Green Owners Assn., 42 Cal. 3d 490, 503-05 (1986) (emphasis added).

The Court properly relies on the tortious acts allegedly committed by Picow and Marx in concluding that Plaintiffs have satisfied the "purposeful availment" prong of specific jurisdiction. The second prong of the test is also satisfied because Plaintiffs' claims arise out of the acts that were directed at California. The third and final prong is met because the exercise of jurisdiction is reasonable in this case.

We consider seven factors in determining the reasonableness of jurisdiction: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. CE Dist., LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004).

These factors weigh in favor of the exercise of jurisdiction. Marx and Picow interjected themselves in the forum state's affairs by voluntarily serving on the Board of a company that has a principal place of business in California. California has an interest in adjudicating the dispute because InfoSonics, a California citizen, was allegedly harmed. The home states of the defendants, Colorado and Florida, do not have an interest in the litigation. A majority of the defendants are California citizens, and it would be most efficient for Plaintiffs' claims against Defendants to be litigated in a single action. Although it might be somewhat inconvenient for Marx and Picow to have to travel to California for certain proceedings in this

action, the Court does not believe that it would be unduly burdensome. As noted by Plaintiffs, Marx and Picow travel quite frequently for business purposes.

Furthermore, the exercise of personal jurisdiction in this case comports with a basic sense of fairness. In Mehlenbacher, the court found that the exercise of personal jurisdiction over the defendant director comported with due process, explaining:

> He is accused of intentional wrongdoing directed at a corporation headquartered in Florida, which injured that company in Florida. Further, Bujoreanu is no ordinary (alleged) third-party tortfeasor. He is a corporate director and audit committee member of a Florida-based company. Based on "common sense and everyday experience," these are significant positions customarily associated with a company's governance. Further, these positions are voluntarily assumed and held; it was Bujoreanu's choice to accept leadership positions in a corporation headquartered in this state. Hence, Bujoreanu's contacts with Florida are not random, fortuitous or attenuated; he can hardly claim surprise at being haled into a Florida court to answer to the kind of allegations levied against him in the Amended Complaint.

Mehlenbacher, 2005 WL 4585859 at *14. Similarly, here, Marx and Picow held positions of power in a corporation headquartered in California and attended Board and Committee meetings here. Their contacts with the state are of such a nature that it is undoubtedly just for this Court to exercise personal jurisdiction over them.

B. Demand on Board of Directors

Nominal Defendant InfoSonics and Defendants Ram, Klausner, Murgo, Rosler, and Waldron have filed a motion to dismiss on the ground that Plaintiffs failed to make a demand on the Board of Directors as required by Fed. R. Civ. P. 23.1 and Maryland Law. The Court agrees that dismissal is required so that Plaintiffs may either make a demand on the Board of Directors or amend their Complaint to demonstrate that such a demand would be futile.

Federal Rule of Civil Procedure 23.1 provides that a complaint in a derivative action "shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." The demand requirement is governed by the law of the state in which the nominal corporate defendant is incorporated. Kamen v. Kemper Fin. Servs., 500 U.S.

90, 95 (1991).

Maryland law governing demand futility is set forth in Werbowsky v. Collomb, 362 Md. 581 (2001). In Werbowsky, the Maryland Court of Appeals declined to eliminate the futility exception altogether, but made it clear that it was "*a very limited exception*, to be applied only when the allegations or evidence clearly demonstrate, *in a very particular manner*, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (3) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." Id. at 620 (emphasis added).

The court in Werbowsky explained that the demand requirement could not be skirted by general allegations that a majority of the directors approved the challenged transaction and/or would not be receptive to filing suit:

> We . . . are not willing to excuse the failure to make demand simply because a majority of the directors approved or participated in some way in the challenged transaction or decision, or on the basis of generalized or speculative allegations that they are conflicted or are controlled by other conflicted persons, or because they are paid well for their services as directors, were chosen as directors at the behest of controlling stockholders, or would be hostile to the action. The demand requirement is important. Directors are presumed to act properly and in the best interest of the corporation. They enjoy the benefit and protection of the business judgment rule, and their control of corporate affairs should not be impinged based on non-specific or speculative allegations of wrongdoing. . . . We agree, moreover, with the ABA/ALI that, in most cases, a pre-suit demand on the directors is not an onerous requirement. As the Seventh Circuit court noted, it gives the directors – even interested, non-independent directors – an opportunity to consider, or reconsider, the issue in dispute. It may be their first knowledge that a decision or transaction they made or approved is being questioned, and they may choose to seek the advice of a special litigation committee of independent directors, which has become a common practice, or they may decide, as a business matter, to accede to the demand rather than risk embarrassing litigation.

Id. at 618-19.

Plaintiffs have not satisfied Maryland's strict requirement for establishing demand futility. Plaintiffs contend that a majority of the directors are so personally conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith. However, Plaintiffs have not come forward with specific facts

demonstrating that when faced with a demand, the directors would not act in the best interest of InfoSonics.

With respect to the allegedly "backdated" stock options, Plaintiffs argue that a demand would be futile because three members (Marx, Picow, and Waldron) of the five-person Board were on the Compensation Committee that approved the grants, and all of the Board members received the stock options. Plaintiffs also claim that Marx, Picow, and Waldron, as members of the Audit Committee, failed to implement adequate internal controls to prevent improper backdating. Plaintiffs rely on Ryan v. Gifford, 2007 WL 416162 (Del. Ch. 2007), in which the Delaware court held that the plaintiff had sufficiently established demand futility where three members of a board approved backdated options and another board member accepted them. However, Ryan does not govern this Court's decision because it applied Delaware law. Delaware's requirements for demand futility are more permissive than Maryland's, requiring only that the facts alleged create a "reasonable doubt" that the directors are disinterested and independent. Sekuk Global Enter. Profit Sharing Plan v. Kevenides, 2004 WL 1982508 (Md. Cir. Ct. 2004). See also Werbowsky, 362 Md. at 143 (declining to adopt in full the Delaware approach).

As mentioned above, the fact that the majority of the directors approved or participated in some way in the challenged transaction is not sufficient to establish futility. The Board could seek the advice of a special litigation committee or could even accede to the demand. Plaintiffs place much reliance on the "substantial likelihood of liability" on the part of Defendants. However, the Court does not believe that the "likelihood of liability" is a proper reason for finding demand on the Board to be futile. If "likelihood of liability" is based on the allegations of the Complaint, all well-pled complaints would be able to establish demand futility. If facts outside of the pleadings may be considered in determining "likelihood of liability," a trial on the merits would be needed to determine whether to apply the futility exception. In Werbowsky, 362 Md. at 620, the court made it clear that the issue of futility is discrete and does not go to the merits of the underlying complaint – i.e., whether there was, in fact, self-dealing, corporate waste, or a lack of business judgment with respect to the

challenged decision or transaction.[1]

The fact that Defendants received allegedly back-dated stock options does not render them financially interested and thus, conflicted. Defendants never exercised their options, and, prior to the commencement of this action, the stock price fell below the exercise price for all of the December 2005 option grants. (Def.'s Notice of Lodgment, Exhs. F, L, M, N, O, P, Q, and R.)

With respect to the misclassification of the warrants, Plaintiffs argue that Marx, Picow, and Waldron, as members of the Audit Committee, allegedly breached their fiduciary duties by failing to investigate and review relevant materials in a timely manner to ensure proper accounting for the warrants, and by choosing to maintain the improper classification of the warrants. Again, the fact that a majority of the Board participated in the challenged decision does not satisfy Maryland's stringent requirements for demand futility. Furthermore, InfoSonics' officers and directors voluntarily initiated an investigation into the classification of the warrants, retaining outside firms. These actions by the Board undermine Plaintiffs' argument that Defendants are incapable of acting in the best interest of the Company.

Plaintiffs' general allegation that each of the Defendants breached their fiduciary duty by failing to prevent and correct improper financials with respect to the warrants and backdated options, similarly fails to demonstrate futility. The futility exception would eviscerate the demand requirement if demand were deemed futile anytime a derivative suit alleged breach of fiduciary duty in connection with the issuance of SEC filings or other financial statements.

The Complaint also alleges that Ram dominates and controls each of the individual Defendants on the Board and that Marx, Picow, and Waldron receive substantial compensation for service on the Board. (Complaint, ¶¶ 108-09.) However, the allegations

---

[1] Similarly, the Court does not find persuasive Plaintiffs' argument that Defendants are conflicted because InfoSonics' insurance policies contain an "insured versus insured exclusion." See Sekuk, 2004 WL 1082508 at *9 ("Based on the rationale of Werbowsky, this Court concludes that when it does directly address the issue, the Court of Appeals will most likely follow the lead of other courts which have held that an insured-versus-insured provision does not excuse a pre-suit demand.")

regarding Ram's control and domination are conclusory. The allegations that Marx, Picow, and Waldron are paid well and would want to keep their jobs also fall short of establishing futility. See Werbowsky, 362 Md. at 618.

Plaintiffs have not met their burden of clearly demonstrating that the Director Defendants are so personally and directly conflicted or committed to the challenged decision that they cannot reasonably be expected to respond to a demand in good faith and within the scope of the business judgment rule. Therefore, the Court dismisses the Complaint for failure to make a demand on the Board. The Court will grant Plaintiffs leave to file an amended complaint. However, Plaintiffs are cautioned that the Court heeds Werbowsky's admonition that the futility exception is a "very limited exception."

C. Failure to State a Claim/Lack of Standing

   1. Section 304 of Sarbanes-Oxley

Defendants contend that there is no explicit or implicit private right of action under section 304 of the Sarbanes-Oxley Act. The Court agrees.

Section 304 does not explicitly grant a private right of action, remaining silent on the issue of enforcement. As for whether section 304 implies a private remedy, the Court agrees with the reasoning of Kogan v. Robinson, 432 F. Supp. 2d 1075 (S.D. Cal. 2006) and Neer v. Pelino, 389 F. Supp. 2d 648 (E.D. Pa. 2005), and concludes that Congress did not intend to create an implied right of action in section 304.

The Court is not persuaded by Plaintiffs' argument that an implied right of action is supported by evidence that Congress rejected alternate language that would have expressly limited enforcement of section 304 to the SEC. That such language may have been proposed along the way and was not included in the final version of the Act, for whatever reason, does not mean that Congress meant to create a private right of action. If Congress intended to create a private right of action, it could have included language doing so, just as it did in section 306.

Because there is no private right of action under section 304, the Court **DISMISSES**

Count One **WITH PREJUDICE**.

### 2. California Corporations Code § 25402

Defendants contend that Plaintiffs' insider trading claims under Cal. Corp. Code § 24502 are governed by Maryland law under the "internal affairs" doctrine. Defendants further contend that Plaintiffs have failed to state a claim under Maryland law.

The California Court of Appeal has held that the "internal affairs" doctrine does not bar an action for insider trading under the California Corporate Securities Law of 1968 against a corporation incorporated in a different state. Friese v. Superior Court, 134 Cal. App. 4th 693 (2005). Plaintiffs have sufficiently stated a claim for insider trading under California law. Ram, Klausner, and Rosler argue that their 10b5-1 trading plans insulate them from liability for insider trading. However, whether these trading plans were legitimately adopted or were put in place after learning of material, nonpublic information that could affect the price of stock, can not be resolved at the pleading stage.

## III. CONCLUSION

For the reasons discussed above, Marx and Picow's motion to dismiss for lack of personal jurisdiction [13] is **DENIED**. The motion to dismiss for failure to make a demand on the Board of Directors [19] is **GRANTED**. The Complaint is **DISMISSED** in its entirety with leave to amend. Any amended complaint must be filed on or before **October 5, 2007**. The motion to dismiss for failure to state a claim [19] is **GRANTED IN PART** and **DENIED IN PART**. The motion is denied as to the insider trading claims and is granted as to Count One for violation of section 304 of the Sarbanes-Oxley Act, which is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: September 4, 2007

Honorable Barry Ted Moskowitz
United States District Judge